KAHN, J.T.C.
This is the court’s determination with respect to the plaintiffs (taxpayer) motion for summary judgment to cancel rollback tax assessments covering tax years 1998 through 2000. The issue is whether rollback taxes can be assessed by means of the alternate method, N.J.S.A. 54:4-63.31 to -63.40, rather than by the original method, N.J.S.A. 54:4-63.12 to -63.30.
The subject property is Block 8, Lot 18.01, on the tax map of the Borough of Chester, located on Budd Avenue, Morris County. The defendant (municipality) assessed the subject property for tax years 1998 through 2000 as qualified farmland pursuant to the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to -23.23. The taxpayer purchased the subject property on or about October 11, 2000, and thereafter began to develop the property for residential use. On or about October 22, 2002, the taxpayer received three tax bills from the municipality assessing rollback taxes for tax years 1998,1999 and 2000.
The taxpayer’s certification in support of its motion also states in relevant part as follows:
*18 1. Each tax bill received by the taxpayer described the assessments as “added assessments” for “rollback taxes” and had an assessed valuation for the subject property of $168,259.
2. To the best of the taxpayer’s knowledge, during the 2000, 2001 and 2002 calendar years, the taxpayer, and the prior owner, were not served with a written complaint by the municipality seeking to impose or assess rollback taxes on the subject property. Nor was the taxpayer or the prior owner given any notice, in writing or otherwise, of any hearing to be held before the Morris County Board of Taxation (county board) with respect to an application to assess rollback taxes. The first time the taxpayer became aware that rollback taxes were assessed on the subject property was when the taxpayer received the aforementioned tax bills in October, 2002.
3. On or about November 4, 2002, the taxpayer served petitions of appeal to the county board seeking to set aside the rollback tax assessments.
4. On or about December 17, 2002, the county board entered memoranda of judgment rejecting the taxpayer’s appeal and affirming the rollback tax assessments levied by the municipality.
5. On or about January 31, 2003, the taxpayer filed the within complaint with the Tax Court.
In opposition to the motion, the municipality’s tax assessor certified in relevant part as follows:
1. The assessor first became the municipality’s tax assessor in March 2002. Soon after he became the municipality’s tax assessor, he was informed that his predecessor had not completed a farmland rollback tax assessment for the subject property.
2. The subject property was assessed as farmland in 1998, 1999 and 2000. The title to the property was transferred to the taxpayer on October 11, 2000. The subject property received a non-farmland assessment in 2001, which was recorded by the tax assessor’s predecessor.
3. In August 2002, the assessor telephoned the taxpayer to alert the taxpayer of his decision to levy an omitted rollback tax assessment for tax years 1998,1999 and 2000.[1] The assessor also informed the taxpayer that he would be mailing a rollback tax worksheet in September 2003. At the end of September 2003, the worksheet was mailed to the taxpayer.
4. The taxpayer indicated to the assessor that it should not have to pay the aforementioned rollback tax assessments since, as of mid-August 2002, it no longer own the property.
5. In October 2003 [2], preliminary tax bills for tax year 2003 were prepared for the taxpayer that notified the taxpayer of the omitted rollback tax assessments for *19 tax years 1998, 1999 and 2000. The bill included the following notice: “Tax appeals must be filled (sic) before 12-01-02 with the County Board of Taxation.” The assessor included the omitted rollback tax assessments on his added/omitted list submitted to the county board in October 2003.
The municipality does not dispute the timeliness of the taxpayer's complaint filed with the Tax Court. The municipality contends that, as a matter of law, the taxpayer is not entitled to the relief sought.
I. LAW AND ANALYSIS
A. Summary Judgment Standard
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 666 A.2d 146 (1995), the Supreme Court of New Jersey revised the summary judgment standard[3] and articulated:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[142 N.J. at 523, 666 A.2d at 147.]
Furthermore, “the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [the party] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable *20 minds could differ, the motion must be denied.” Brill, supra, 142 N.J. at 535, 666 A.2d at 154 (citing Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991) (citations omitted)).
B. Taxable Status
N.J.S.A. 54:4-23.8 of the Farmland Assessment Act, which provides for the assessment of rollback taxes, states in pertinent part as follows:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of P.L.1964, c. 48 (C.54:4-23.1 et seq.), is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the two tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
If the tax year in which a change in use of the land occurs, the land was not valued, assessed and taxed under P.L.1964, c. 48 (C.54:4-23.1 et seq.), then such land shall be subject to roll-back taxes for such of the two tax years, immediately preceding, in which the land was valued, assessed and taxed hereunder.
[Emphasis added.]
N.J.S.A. 54:4-23.9 states that the assessment of rollback taxes shall be governed by the procedures provided for in assessing omitted property.
The assessment, collection, apportionment and payment over of the roll-back taxes imposed by section 8, the attachment of the lien for such taxes, and the right of a taxing district, owner or other interested party to review any judgment of the county board of taxation affecting such roll-back taxes, shall be governed by the procedures provided for the assessment and taxation of omitted property under chapter 413 of the laws of 1947. Such procedures shall apply to each tax year for which rollback taxes may be imposed, notwithstanding the limitation prescribed in section 1 of said chapter respecting the periods for which omitted property assessments may be imposed.
[N.J.S.A. 54:4-23.9 (emphasis added) (footnotes omitted).]
The procedures for assessing omitted property are provided under N.J.S.A. 54:4-63.12 to -63.30, also known as the original method. N.J.S.A. 54:4-63.12 states as follows:
In any year or in the next succeeding year, the county board of taxation may, in accordance with the provisions of this act, assess any taxable property omitted from the assessment for the particular year.
[Emphasis added.]
*21 To assess property omitted from a prior year’s assessment, the municipality, pursuant to N.J.S.A. 54:4-63.13, must submit a written complaint to the county board of taxation, which grants a hearing on the matter, on least fifteen days’ written notice to the owner of the property stating the time, place and purpose of the hearing. N.J.S.A. 54:4-63.13 states:
On the written complaint of the tax assessor, the collector of taxes, or any taxpayer, of the taxing district, or of the governing body thereof, or upon a resolution by the county board of taxation, of its own motion, the county board of taxation shall hear the matter. Any such complaint or motion shall specify the property alleged to have been omitted and the particular year of the assessment. At least 15 days’ notice in writing shall be given to the owner of the property of the time and place of the hearing and the notice shall specify the property alleged to have been omitted and the particular year of the assessment. The notice may be served by certified mail. The collector shall present such complaints and serve such notices as the governing body may direct and shall attend before the county board of taxation and subpoena proper witnesses and pay their fees. He shall receive reimbursement therefor and two dollars ($2.00) for every day he shall attend for his services from the taxing district. When the tax assessor files a complaint, the tax board shall send a notice of the complaint to the tax collector. [Emphasis added.]
The municipality contends that the taxpayer’s appeal of the rollback tax assessment before the county board constituted a sufficient notice and hearing pursuant to N.J.S.A. 54:4-63.13. This court disagrees. In SLR Associates of Millville v. Millville City, 11 N.J.Tax 1 (Tax 1989), the Tax Court stated: “Under the original method of imposing omitted assessments, the tax assessor cannot initially impose the [omitted] assessment. Instead, he has the obligation of first filing a complaint with the county board of taxation.” Id. at 5. In the present case, the municipality failed to file an application for assessment with the county board as required by N.J.S.A. 54:4-63.13. In addition, no written notice of hearing was provided to the taxpayer and no hearing was held or judgment entered by the county board in response to an application for assessment by the municipality.
The municipality also contends that, in the present circumstances, the alternate method, N.J.SA 54:4-63.31 to -63.40, instead of the original method in assessing omitted property, can be applied. The municipality argues that its failure to assess rollback taxes during the change-in-use tax year created an error of *22 omission whereby the municipality can collect an omitted assessment by employment of the alternate method. The taxpayer does not dispute that the municipality properly followed the procedures of the alternate method; however, it contends that the alternate method cannot be employed in levying rollback taxes, even if the rollback taxes are levied as an omitted assessment.
N.J.S.A. 54:4-63.32, which provides the procedures of the alternate method, states as follows:
On October 1 in any year in which prior thereto, the assessor has assessed omitted property, the assessor shall file an assessor’s omitted list and a true copy thereof, to be called the “Assessor’s Omitted Property Assessment Duplicate” with the county board of taxation. The county board of taxation shall examine, revise and correct the omitted assessment lists and duplicates, if any be filed, and, on or before October 10 in each year, cause the corrected, revised and completed duplicates, if any, certified by it to be a true record of the omitted taxes assessed, to be delivered to the assessors and the collectors of the taxing districts in the county, affected by such omitted assessments and the omitted assessments lists shall remain in the office of the board as a public record.
In Atlantic City Development Corporation v. Hamilton Tp., 3 N.J.Tax 363 (Tax 1981), the Tax Court dealt with the issue of which method governs the assessment of rollback taxes, stating:
“Rollback taxes, ” as defined by N.J.S.A. 54:4-23.8, technically are not “omitted” or “added” assessments; instead, they are “additional taxes, hereinafter referred to as rollback taxes,” and in adopting a method to be followed by the assessor in assessing same, the Legislature specifically directed that the procedure to be followed was that as set forth under the original Assessment of Omitted Property Act, N.J.S.A. 54:4-63.12 et seq. By requiring the assessor to follow this procedure it did not designate rollback taxes as “omitted” or “added” property.
Since the alternate method, as set forth in N.J.S.A. 54:4-63.31 et seq., was adopted subsequent to N.J.S.A. 54:4-63.9, and did not supersede or amend N.J.S.A. 54:4-63.12, the original method, the procedure outlined in the latter method must be followed by an assessor in levying rollback taxes as mandated by the Legislature. It is obvious that the Legislature intended that before rollback taxes could be added the county board must follow the regular procedure of notice, hearing and judgment, as outlined in the original method Unlike omitted and added assessments, an assessor who desires to add farmland rollback taxes to his assessment rolls does not have the discretion to follow either the original method or the alternate method instead, he must follow the procedure outlined in the original method
[Id. at 368-69 (emphasis added).]
The Appellate Division in Cherry Hill Indus. Properties v. Voorhees Tp., 186 N.J.Super. 307, 452 A.2d 673 (App.Div.1982), aff'd *23 as modified, 91 N.J. 526, 453 A.2d 850 (1982), held that, where a municipality is seeking to collect an added assessment which had been omitted, and not rollback taxes, employment of the alternate method of assessing omitted property is proper. The municipality argues, however, that Cherry Hill, supra, 186 N.J.Super. 307, 452 A.2d 673, and Atlantic City Development, supra, 3 N.J.Tax 363, do not address which method must be applied in levying an omitted rollback tax assessment. The municipality contends that its failure to properly levy rollback taxes during the change-in-use tax year created an “omitted assessment” which can be corrected by employment of the alternate method. Although this court concedes that neither Cherry Hill, supra, nor Atlantic City Development, supra, involved an omitted assessment where the omission was that of a rollback tax assessment, and in its research, this court has not found a case involving these circumstances, and therefore rejects the municipality’s argument.
The Tax Court, in Atlantic City Development, supra, 3 N.J.Tax 363, expressly requires the employment of the original method by municipalities in levying rollback taxes. See also Alpha-Bella VI, Inc. by United Jersey Bank v. Clinton Tp., 14 N.J.Tax 597 (Tax 1995). To allow municipalities to employ the alternate method in levying rollback taxes by means of an omitted assessment would provide a means to circumvent the Tax Court’s holding and the express provisions of N.J.S.A. 54:4-23.9. Municipalities would have available the alternate method simply by failing to properly assess rollback taxes during the change-in-use tax year. This result could not have been what the Legislature intended.
This court finds that the municipality has failed to follow the mandated procedures for assessing rollback taxes pursuant to the original method. In American Hydro Power Partners v. City of Clifton, 11 N.J.Tax 12 (Tax 1990), the Tax Court stated: “Failure to observe statutory timelines for omitted or added assessments invalidates those assessments.” Id. at 22 (citing American Hydro Power Partners, LP v. City of Clifton, 9 N.J.Tax 259 (Tax 1987); Chevron U.S.A., Inc. v. City of Perth Amboy, 9 N.J.Tax 571, 578 (Tax 1988)). Furthermore, the taxpayer contends: 1) it did not own the subject property when the municipality presented the tax *24 bills and, therefore, it should not be obligated to pay the tax bills; and 2) the municipality’s attempt to assess rollback taxes in October 2002 for tax year 2000 was untimely pursuant to N.J.S.A. 54:4-63.12. This court, however, finds it unnecessary to decide these questions since this court invalidates the municipality’s assessment for failure to follow the mandated procedures provided by N.J.S.A. 54:4-63.12 to -63.30.
Accordingly, the taxpayer’s motion for summary judgment to cancel rollback tax assessments covering tax years 1998 through 2000 is granted.

 The municipality does not argue that this conversation is "notice" for purposes of the procedures that govern the assessment of rollback taxes.

 It is clear that the municipality’s reference to 2003 was inadvertent. The facts are consistent with the date being 2002.

 Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24, 26-28 (1954), appeal after remand, 25 N.J. 17, 134 A.2d 761 (1957), was the "definitive expression of the standards governing the grant or denial of a summary judgment motion.” Pressler, Current N.J. Court Rules, comment on R. 4:46-2 (2002). Before the Brill revision, summary judgments were rarely and sparingly granted because it was necessary to "palpably" demonstrate there is no genuine issue of material fact. See Judson, supra, 17 N.J. at 74, 110 A.2d at 27.